*EASTERN. DIST.*
*May, 1839.*

BERTHOUD
*vs.*
ATLANTIC MA-
RINE AND FIRE
INSURANCE CO.

BERTHOUD *vs.* ATLANTIC MARINE AND FIRE INSURANCE
COMPANY.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

Where the agent of the insured made his written application, and the rate of premium was marked on it by the secretary of the office, but not signed by him, and he expressly informed the agent that the policy would not be ·delivered until the premium was paid, and in the mean time the vessel insured was destroyed by fire, five days after the application: *Held*, that the contract of insurance was not complete, the premium not being paid nor the policy delivered, and that the underwriters were discharged.

No contract is complete without the assent of the parties. In reciprocal contracts it must be expressed. In this case the assent of the defendants was wanting. The proposition to insure was accepted with a condition which was never complied with.

This is an action on a contract of insurance alleged to have been made between the plaintiff's agent, L. H. Gale, to whom his ship, the Moro Castle, was consigned, and the defendants.

EASTERN DIST.
*May*, 1839.

BERTHOUD
*vs.*
ATLANTIC MA-
RINE AND FIRE
INSURANCE CO.

The whole case turns on the question, whether the contract of insurance was complete between the parties at the time of the happening of the loss.

The evidence shows, that the application was made by Mr. Simmons, a clerk of Gale, on the 7th February, 1837, for insurance on the plaintiff's ship, the Moro Castle, and the rate of premium marked at the foot of the memorandum in the handwriting of the secretary of the company, which was accepted by the agent, Gale, in whose name the policy was made out. The policy was filled up by the clerk of the office, and the names of the president and secretary affixed thereto, but the agent was distinctly informed by the secretary that the policy would not be delivered until the premium, was paid. On the 12th of February, five days afterwards, and before the policy was called for or the premium paid, the vessel was destroyed by fire at the Levee, in New-Orleans. The plaintiff now demands the amount proposed to be insured on her, and had judgment, from which the defendants appealed.

*Strawbridge*, for the plaintiff.

*Grymes*, for the appellants.

*Eustis, J.,* delivered the opinion of the court.

The plaintiff sues on a contract of insurance, which he alleges was made on the 7th of February, 1837, with the defendants, by his agent, on the ship Moro Castle, then laying in New-Orleans, for the sum of six thousand dollars, being one-half her value.

The following document is relied on by the plaintiff, as evidence of his contract:

" Insurance on the body, tackle and apparel of the ship Moro Castle, Captain Smith, valued at twelve thousand dollars, for the time of five months, with general liberty, except the ports west of the S.W. Pass: Vera Cruz admitted. Loss, if any, payable to Levi H. Gale.

" *Per pro* : WM. H. SIMMONS.

"Six thousand dollars of the above insured by Mississippi
Fire and Marine Company.

"$6,000."                          "A 2. Four per cent."

Across the lines is written, "Accepted, Wm. H. Simmons."

In pursuance of this proposal and acceptance, it is alleged a policy was made out and signed, but which the defendants refused to deliver to the plaintiff.

The Moro Castle was lost by fire on the morning of the 12th of February, 1837.

The mark "A 2. Four per cent." was made by Mr. White, the secretary of the company. He was examined as a witness, and states, " that, as soon as the application was marked with the premium, and accepted by Mr. Gale, as appears on the face thereof, I immediately told Mr. Simmons to go and bring me the amount of the premium immediately, intimating, by my language and manner, that unless that was done the risk would not be taken by the office ; and this, I have no doubt, he well understood, as he turned round and looked me full in the face, and departed, as I supposed, for the purpose of complying with my demand. The application was then laid on the table, and the clerk employed in the office, as is the constant practice, took it and filled up the policy agreeably thereto. This was done that it might be ready for delivery whenever the premium should be paid."

Simmons, the person who made the application, was examined as a witness for the plaintiff. He states, in the course of his examination, that a day or two after the vessel was burnt he applied for the policy ; the answer made was, that the policy was not filled out, because he had not paid the premium.

White also says, in his examination, that he was determined not to deliver the policy or execute the contract until the premium was paid ; and he was determined not to do so because Levi H. Gale, in whose name and for whose use the insurance was demanded, was at that time in very bad credit, and the deponent had the best evidence of his inability or unwillingness to pay ; that he had been, some

EASTERN DIST.
May, 1839.

BERTHOUD
vs.
ATLANTIC MA-
RINE AND FIRE
INSURANCE CO.

time before, a customer of the office ; that he was then, and had been some time before, indebted to the office for premiums on former risks, payment of which could not be obtained, though often demanded ; and, but a short time before, a seizure was made by a creditor of Gale, of a claim he had against said company, and the amount thereof seized in the hands of said company. The process, or notice of seizure of said claim, was in the hands of the deponent at the time the application was made.

Gale was examined as a witness for the plaintiff. By orders from the captain of the Moro Castle, he had insurance effected on the ship. He had done business for a long time with this office. The mode of doing business was, when the insurance was made, for the deponent not to take the policy at once, but it was left in the office until many had accumulated; they then generally requested him to withdraw his policies, and he then settled by giving them a note. They never did demand of deponent payment of a premium before delivering a policy. In the interval between effecting this insurance and the loss, deponent thinks he was in the office, and that they asked him to send and get his policies.

This witness does not pretend to contradict the declarations of Mr. White, although the indirect effect of his testimony has a tendency to weaken their effect.

He does not pretend to question the statement of White as to the condition of his credit, and his relations with the company at the time of the application of Simmons for insurance. The only part of his evidence which, by implication, can be considered as relating to it, is at best but a matter of uncertainty. Between the interval of the application for insurance and the loss, he thinks, he was in the office, and they asked him to send for his policies. He does not say any thing as to the truth of the matters stated by White, as to the impossibility of the office doing business with him, in the actual state of his credit, except for money or its equivalent. Gale says that they never demanded of him payment of a premium before the delivery of a policy. White does not say that they did demand the payment of

him, but of Simmons, the person who made the application,
and that the demand of him was for immediate payment.

We conclude, after weighing the evidence in this case,
that whatever may have been the previous mode of doing
business between Gale and the office, he, (Gale) in the state
of his credit at the time of making the application for
insurance, had no right to expect a continuance of it on the
part of the defendants, and that the demand of the payment
of the premium made by the secretary of the office, of the
person who made the application for insurance, was a suffi-
cient notice to him, Gale, that the former mode of doing
business with him was discontinued, and that the payment
of the premium was required before the contract of insurance
would be complete.

The insurance, as the plaintiff alleges, was effected about
the 7th February. The vessel was burnt at half-past one
o'clock on the morning of the 12th of that month. A suffi-
cient time intervened to enable the party, had he been so
disposed, to have closed the contract, by the payment of the
premium.

It will be observed that the application was not signed by
any person on behalf of the defendants. The rate of in-
surance was marked by the secretary, but not signed by
him.

No contract is complete without the assent of both parties.
In reciprocal contracts it must be expressed. *Louisiana Code,*
*article* 1759.

Supposing that the defendants were bound by the act of
the secretary, in marking on the application the rate of
insurance, it by no means follows that by that circumstance
the contract of insurance was complete. Consent, on their
part, was not given to the contract itself. The consent was
given that they would insure at the rate marked, provided
the premium was paid. There is no reason for separating
this memorandum from the circumstances under which it
was made. White insisted on the payment of the premium;
and this fact, which Simmons, in his testimony, does not
pretend to controvert, shows a want of assent on the part of

the defendants to the contract of insurance. A sufficient time elapsed to have enabled the parties to correct any misunderstanding which might have existed on the subject. Neither the policy nor memorandum were delivered by the defendants, and we can see nothing in what passed between the parties, but a proposition which was accepted under a condition which was never complied with by the party who now wishes to enforce the contract. See *ante,* 249, *case of Noe* vs. *Taylor.*

The weakness of this part of the plaintiff's case was doubtless perceived by the counsel, and an attempt was made to fortify it, by showing the mode of doing business between the defendants and Gale (in whose name the insurance was to be made), which is stated in his testimony, and corroborated by the evidence of White. The continuance of this mode necessarily depended on the will of the parties. On the part of the defendants, it was necessarily predicated on the credit of the other party; and, at the time of making the application, Gale, after what had passed between them, had no right, as a man of business, to expect, and White, as a man of common prudence, transacting the business of others, had no right to sanction a continuance of their former mode of doing business. At all events, the notice to Simmons was sufficient to terminate it.

The judgment of the District Court is, therefore, reversed; and judgment is entered for the defendants, with costs in both courts.